MAY *v.* EVENING NEWS ASSOCIATION.

1. LIBEL AND SLANDER — PUBLICATION OF LETTER — COMMENTS ON
   ORDINARY MEANING JUSTIFIABLE.

   In an action for libel in publishing plaintiff's letter to
   election inspectors requesting, "If a voter asks for direc-
   tion may I request that you suggest the placing of a
   cross before my name," plaintiff, who was a candidate for
   public office, may not complain because his letter, which
   was a public matter, was printed with such comment as
   the ordinary sense thereof warranted.

2. SAME — JUSTIFICATION.

   The publication of a statement condemning plaintiff for
   sending such letter, attributed to a member of the board
   of election commissioners, who had the matter under
   investigation, was justified by proof that said letter, which
   plaintiff admitted he wrote, called forth said denunciation,
   and it is immaterial whether or not plaintiff's name was
   mentioned by the denunciator, since the real defamation,
   if any, was not in stating that plaintiff's name was thus
   used, but in publishing the denunciation if it was untrue.

Error to Wayne; Hart (Ray), J., presiding. Sub-
mitted October 6, 1922. (Docket No. 29.) Decided
December 5, 1922.

Case by Thomas May against the Evening News
Association and others for libel. Judgment for de-
fendants on a directed verdict. Plaintiff brings error.
Affirmed.

*A. B. Hall,* for appellant.

*Stevenson, Carpenter, Butzel & Backus,* for appel-
lees.

WIEST, J.    This is an action to recover damages

On the question of libel or slander by expressing opinions or
comments without misstating facts as to officers and candidates,
see note in 28 L. R. A. 672.

for alleged libelous publications in the Detroit News on October 25th and 26, 1918. The Evening News Association published the newspaper; George G. Booth was president of the company and George E. Miller editor of the newspaper.

On October 25th there was published in the Detroit News the following article:

"May Asks 'Help' of Vote Clerks.

"Wants Election Chiefs to Instruct Citizens to Cast Ballots for Him.

"The city election commission will meet this afternoon to investigate the circularizing of the election officials of all city precincts by Tom May, candidate for the new council. Mr. May has caused to be sent to each member of the precinct boards a letter which, according to Richard Lindsay, city clerk, would make the officials liable to prosecution should they follow Mr. May's injunction.

"The letter reads:

"'*My Dear Sir:* You are proving your good citizenship by serving as an election official. As such I have no doubt that you are often asked for direction by some voters whose knowledge of candidates is less complete than your own.

"'Does my candidacy appeal to you? I have lived in Detroit all my 58 years. I had 33 years' newspaper experience—20 of which was served on the Detroit Journal, and they show their estimate of my desirability by placing me as their leading candidate.

"'My profession forces me to become a student of municipal affairs and needs, and I have always fought graft under every guise.

"'If a voter asks for direction may I request that you suggest the placing of a cross before my name?

"'Yours truly,

(Signed)   "'Tom May.'

"Mr. Lindsay says that if any candidates attempt to influence the work of election board members by such methods, and the members acquiesce, he will 'send the board men to jail.'"

On October 26th this publication appeared:

"Clerks warned of May Letter.

"Election commission quotes law on giving advice to voters.

"The city election commission perused the Tom May letter to election inspectors Friday afternoon. They unofficially declared it to be the zenith of political strategy.

" 'I cannot understand what would prompt a man to use such means of soliciting votes,' said Judge Charles T. Wilkins. 'There is nothing we can do in the matter aside from sending a strong letter to all inspectors, stating that any attempt by them to follow Mr. May's suggestion will mean their prosecution for violation of their oaths. No man, whether he is an election official or not, may electioneer within 100 feet of a booth.'

"Mr. May asked the booth inspectors, to suggest to any voters who might be in doubt as to whom they wished to vote for to put a cross in front of his name for councilman. It is reported that somebody got the copies of the names of the election inspectors of the city boards and has offered them for certain sums. The election commission will take steps to see that the lists are safeguarded."

The letter mentioned was dated October 10, 1918. Plaintiff admits writing the letter but claims the sting in the published articles lay in the charges that he thereby solicited election officials to corruptly aid his candidacy, and that Judge Wilkins had condemned him by name for doing so. The defendant company pleaded justification. At the trial there was a question of fact as to whether Judge Wilkins, as a member of the board of election commissioners, in considering such appeal to inspectors, and in condemning the same, and in sending instructions to inspectors respecting their duties, knew that plaintiff had sent such a letter and scored him by name. The trial judge directed a verdict for defendants.

Plaintiff insists that this was error; that in any event the question of fact above mentioned carried the issue to the jury under the plea of justification,

and if the remark credited to Judge Wilkins was not made by him the pleaded justification failed and plaintiff could recover.

Upon the whole record was the trial judge justified in directing the verdict? We are of opinion that he was and will state our reasons. Plaintiff was a candidate for member of the council at the election held in the city of Detroit on November 5, 1918. In aid of his candidacy he wrote the letter mentioned to each of the inspectors, designated to act at that election. His candidacy brought him into public view; his letter was a public matter; it spoke its own language, carried its purpose on its face, and defendant company had a right to publish it together with such comment as the ordinary sense thereof warranted. Plaintiff cannot successfully claim he was wronged by the publication of October 25th, if his letter carried on its face, according to ordinary understanding, solicitation of the election inspectors to prostitute their office in aid of his candidacy, even though he may never have had such purpose in mind. One cannot read the letter without being struck with the grave impropriety, to say the least, of its request.

Plaintiff had procured a list of the inspectors, the letter was sent to each inspector as an election official, and on its face related to action on election day. No other sense can be given the words:

"If a voter asks for direction may I request that you suggest the placing of a cross before my name?"

This appeal was to election inspectors, as such, to further the candidacy of plaintiff by suggesting to voters asking for direction to vote for plaintiff. But plaintiff insists that such was not his intention at all; that the inspectors, as citizens, and before assuming their duties at the polls, could, with perfect propriety, advise any other citizen to vote for plaintiff. Unfortunately, if such was the intention in the breast of

plaintiff, his pen failed to make it manifest in his letter.   While an innocent purpose, incompatible with the help solicited from the inspectors, may comfort plaintiff, it cannot be employed to change the plain import of his letter nor operate to hold defendant company liable in damages for publishing the letter and giving its author such criticism as the letter, taken in its ordinary sense, justified.

The article published on October 25th was fully justified by the letter.   It is alleged that the article published on October 26th stated sharp criticism of plaintiff, by name, by Judge Wilkins, and that this was untrue in fact.   Whether Judge Wilkins actually saw the letter written by plaintiff, or based his criticism upon knowledge of such a letter, without knowing about plaintiff's connection therewith, is of little importance.   If Judge Wilkins scored the practice indulged by plaintiff, without knowing he was hitting plaintiff, and without naming any one, then plaintiff ought not to be permitted to recover damages, even though the statement that plaintiff was named was untrue.   If plaintiff's name was not, in fact, mentioned by Judge Wilkins, the purport of his letter was the subject upon which he expressed himself, and this hit plaintiff just as hard as though he had been named. The remarks of Judge Wilkins were of and concerning plaintiff.

The evidence offered by defendants tended strongly to support the assertion that Judge Wilkins named plaintiff, but we are not triers of the facts, and have considered the question as an open one, but do not feel it of enough importance, even if determined in favor of plaintiff, to govern the issue of justification.

The real defamation, if any, was not in stating that Judge Wilkins named plaintiff in his denunciation, but in publishing the denunciation, if it was untrue. When defendant company established the fact that

plaintiff's letter called forth the action taken by the election commissioners and the condemnation expressed by Judge Wilkins, it justified its publication and statement, even though Judge Wilkins did not mention plaintiff by name.

The minutes of the meeting of the election commission show:

"Present, Wilkins and Guthard and Lindsay. * * * A letter written by Tom May, councilmanic candidate, addressed to a member of one of the election boards asking that he instruct those making inquiries concerning candidates to place a cross before his name was brought to the attention of the commission. Commissioner Wilkins did not think the communication was of a nature to call for any action as far as Mr. May was concerned, but it was agreed that on the card of final instructions to board members a paragraph should be inserted reading practically as follows:

" 'Under no circumstances shall the board of election inspectors do any electioneering or advance the name of any candidate within the election house while the board is in session. This does not, of course, prohibit assisting voters requesting instructions and answering such questions as they may ask before the other members of the board.'

"The motion to place above on instruction card prevailed."

The court below was right in entering judgment. This determination renders consideration of alleged errors in the admission and exclusion of evidence unnecessary.

The judgment is affirmed, with costs to defendants.

FELLOWS, C. J., and MCDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred. MOORE, J., did not sit.